Turn to case number 4, Hicks v. Hepp. Thanks very much, I appreciate it. Mr. Deasonhouse? Good morning, and may it please the court. I'm here on behalf of petitioner appellant Douglas G. Hicks. Mr. Hicks' conviction in Wisconsin State Court is unsound for two reasons. The jury convicted Mr. Hicks based on his coerced confession, and after the prosecutor made an improper invitation to the jury to convict Mr. Hicks because he had not been sufficiently punished for separate, unrelated misconduct. Trial counsel's failure to object to admission of the coerced confession or the prosecutor's remarks amounts to ineffective assistance of counsel under Strickland. As the district court correctly found, the coerced confession came into evidence because trial counsel acted deficiently under Strickland's first prong and failed to move to suppress Mr. Hicks' inculpatory statements. Not only does the state challenge that finding, but now, for the first time on appeal, it contends that Mr. Hicks' ineffective assistance of counsel argument based on the coerced confession is procedurally defaulted, a defense that is both waived and meritless, and that admission of the coerced confession was in no way prejudicial, even though the state put on no physical evidence and the trial essentially came down to a credibility determination between Mr. Hicks and the alleged victim, E.J., as the trial court recognized. Now, you agree, though, that his petition before the Wisconsin Supreme Court didn't contain any substantive argument regarding either ineffective assistance and doesn't even mention Strickland or the Sixth Amendment. It does not mention Strickland or the Sixth Amendment. That's true, Your Honor. However, it does frame an argument for ineffective assistance of counsel, which is well established as a violation of the Sixth Amendment and analyzed under Strickland standards. And although the argumentation on ineffective assistance of counsel was brief, the petition for discretionary review by the Wisconsin Supreme Court clearly framed two claims of ineffective or two arguments in support of a claim of ineffective assistance of counsel, one based on the failure to move to suppress the coerced confession and one based on the failure to object to the prosecutor's closing remarks. When you say framed, by that do you mean the subheadings, basically? The issues presented, Your Honor. And then the issues presented went on to describe how the lower courts treated, how the Wisconsin state courts treated those claims when they were before them, went on to describe the factual basis for those claims, describing the entirety of the, with respect to, particularly with respect to the prosecutor's closing argument, went on to describe what the prosecutor argued in closing, that trial counsel failed to object and that the lower courts had determined this was a reasonable trial strategy. The brief then went on to argue that, in fact, this was not a reasonable trial strategy, so in essence undermined the entire basis for the state court's determination. I suppose turning back to the first of the two ineffective assistance of counsel arguments, that relating to the coerced confession, I'd start first with the prejudice prong. Here it is undoubted, well, first, this is an issue that this court reviews de novo because the Wisconsin state courts never reached whether counsel's failure to move to suppress the coerced confession was prejudicial. Second, I think it is telling that the state did not argue before the district court that there was no prejudice as a result of trial counsel's failure. It simply argued that the statements were voluntary. Counsel, could I ask you, help me out on this, as I understand it, there was something called this good child hearing on the phone call confession, right? Yes, Your Honor. And the judge at the end of that hearing, as I understand it, said, okay, I think this was a voluntary confession. That's correct, Your Honor. So how would a motion to suppress have offered any reasonable prospect of changing that result? Yes, Your Honor. Well, quite frankly, that good child hearing was the trial court decided at that good child hearing solely upon the state's presentation of evidence. And, in fact, there's nothing in the record to reflect that the trial court actually listened to the entirety of the tape or reviewed the entire transcript of the recorded conversation. It certainly was presented as an exhibit, but the trial court stated in making its ruling, based on the testimony before me, I determine, I rule that these statements were voluntary. So it wasn't, now, was it an ex parte hearing? No, Your Honor. Defense counsel was there.  that this was voluntary and did not put up any defense that these statements were, in fact, involuntary. This is some sort of recognized Wisconsin state court procedure? I believe so, Your Honor. I think it's essentially to decide the voluntariness of the statements so that, if they are brought into evidence later, there will not need to be an evidentiary ruling at the time of trial. I see. It's like a motion in limine and it was not opposed by defense counsel. Exactly, Your Honor. So would it be accurate, then, to say that the ineffective assistance of counsel claim kind of has at least the extra dimension of not having contested the good child hearing? That's correct, Your Honor. It's essentially the same as the failure to bring a motion to suppress. Exactly, Your Honor. And we know that this was, indeed, prejudicial. So the standard for prejudice, as Your Honors, I'm sure, well know, is was there a reasonable probability that the outcome of the proceeding would have been different but for counsel's ineffectiveness? Here, we know that the coerced confession was a centerpiece of the prosecution's case against Mr. Hicks. The prosecutor repeatedly returned to the coerced confession during closing arguments. Indeed, the final words of the prosecutor's closing paraphrased Mr. Hicks' statement. The prosecutor said, EJ, I'm sorry for molesting you. I wish he was. Thank you. Now, the fact that the prosecutor's closing also referenced Mr. Hicks' statements in a number of other ways. The prosecutor repeatedly admonished the jury to judge Mr. Hicks on his words. The prosecutor also said an innocent person would not apologize for such heinous misconduct. And although we did not cite it in the brief, on page 194 of the supplemental appendix, you can see in the closing the prosecutor says, now, no CSI evidence, no physical evidence, I'll take a confession. The prosecutor was basically saying that Mr. Hicks' apology to EJ was tantamount to physical evidence that he had done, that he had committed the sexual abuse. Now, there was the testimony of the two other victims. There was, Your Honor, but that was admitted solely for the purpose of motive and could not be used to determine whether Mr. Hicks had, in fact, on this occasion, sexually abused EJ. All right. And then, although if you add that motive evidence plus EJ's testimony, what was EJ's motive to lie? Well, Your Honor, mere days before EJ came forward with his allegations of sexual abuse, Mr. Hicks' attorney had sent a letter to Mr. Hicks' ex-wife, EJ's mother. Right. So there's this family court dispute. And so he, the theory is that he would announce a lie of this magnitude in order to help out on the family court dispute. Correct, Your Honor. I mean, I think that is, yes, Your Honor. I suppose we also know that, well, so I believe that fairly demonstrates the prejudicial impact of the coerced confession, that these were powerful damaging statements. As the Supreme Court has stated in Arizona v. Fulminante, a confession wrung from the lips of the defendant is incredibly damaging and powerful, such that even when there is other evidence in the record, the jury is likely to convict solely on the basis of the coerced confession. Moreover, there is another reason why a confession, when it is coerced, must be suppressed, and that is to deter police from engaging in the coercive conduct. If it's simply enough to put the full transcript before the jury and allow them to decide whether there was coercion on this particular instance, it incentivizes police to go forward and use whatever coercive conduct they may desire and then simply roll the dice before the jury. Mr. Diesenhaus, the principal argument for coercion, as I understand it, is that the threat to disclose these accusations to Mr. Hicks' son is what convinced him to confess. And can you direct us to, particularly Supreme Court, but I'll take other authority as well, to the effect that not a physical threat or a threat to take unlawful action, but simply a threat to disclose allegations was deemed coercive? Well, Your Honor, I think the closest or most analogous case is the Supreme Court's decision in Lynham v. Illinois and also this Court's decision in Sornberger, both of which are cited in the opening brief. In those cases, threats to prevent the defendant from accessing his or her children absent a confession were deemed coercive. In Lynham, it was a threat to take action with state social services agencies, right, to remove the children from the home? It was, Your Honor, but pivotal to that defendant's – pivotal to the Court's determination that that defendant had been coerced was her belief that if she went along and admitted, the state would take no action with respect to her children. So that is really directly – that is parallel to what happened here. Although the source of that threat was someone in the government. That is true, Your Honor. However, in Arizona v. Fulminante, we know – or we know from Arizona v. Fulminante that a threat from a non-state actor acting on behalf of the state, who effectively becomes a state actor, can be as – can be as coercive as a threat from a state official. Right. It can be, but it's specifically in the context that Judge Hamilton asked of a nonphysical threat. We don't – I am unfortunately not aware of a precedent where it's a nonphysical threat, Your Honor, but I think combining the thrusts of those two cases, we do see that an individual acting on behalf of state law enforcement can make coercive threats, and that under the right set of circumstances, because it is always judged under the totality of the circumstances, that a threat to prevent a defendant from accessing his or her children can be deemed coercive. I think the concern is once you have to combine some cases, and it's a multi-factor test that you run into the deference on habeas. I understand, Your Honor, but a totality of the circumstances – a totality of the circumstances standard, although broad, is not in any way unclear. And so, therefore, there is a clear standard that was put for – that was known by the state courts that they could apply. Now, of course, the facts are individualized, but the standard was clear from the line of cases involving coerced confessions and, indeed, involving Strickland. Could I take you back before you sit down to the procedural issue that at least has been preserved by the state with respect to the closing argument claim? We have the Supreme Court telling us in Baldwin v. Reese that the fair presentment issue with respect to discretionary review in state Supreme Courts, in essence, it has to be – you can't require the state court to read anything beyond the petition. I'm not sure how consistent some of our case law is with Baldwin v. Reese. However humane, intelligent, and fair-minded it may have been, I wonder whether you're asking us to take action contrary to the Baldwin v. Reese rule. I don't believe so, Your Honor. As this court has said in Harrison and Ellsworth and elsewhere, that a claim can be fairly presented if it is presented in terms so particular as to call to mind a specific constitutional right. And in the petition for discretionary review, Mr. Hicks clearly put before the Wisconsin Supreme Court a claim based on ineffective assistance of counsel. That is a clearly and well-understood Sixth Amendment claim. All right. You want to save the rest of your time? Yes, please. Thank you, Your Honor. All right. Thank you. Mr. Walsh. May it please the Court. I'd like to begin where my friend on the other side began, which is prejudice on the first Strickland argument. The evidence against Hicks at trial was overwhelming. The confession played a very minor role in the State's case-in-chief. The State called E.J., the victim, who testified in graphic detail as to three sexual assaults in particular and to over 120 over a three-year period. The State called two other young men, who were boys at the time, who were sexually assaulted in a similar manner. The State also called- Well, that was, as the petitioner points out, limited to motive evidence. That's right, limited to motive. But motive is very important in these cases because it's not every person who has this proclivity to do such things to young people. That is absolutely true. But then it came down to a credibility fight between E.J. and Mr. Hicks, basically. No, there's also the evidence from the mother, who was called around the same time as this phone conversation occurred, called three times, in fact, by the defendant. And on those calls, the defendant confessed to being guilty, offered to help in any way that he could, wanted to make sure that his relationship was in good standing. Did the petitioner dispute that testimony? Petitioner- Dispute the ex-wife's testimony? Yes. It's also important- I've got to say, the argument that this wasn't important is pretty hard to swallow. Well, let me try to work at it with you here. The other side cites Fulminante for the proposition that confessions are powerful evidence. The full paragraph from Fulminante says that full confessions are powerful evidence. When you have a confession in which the defendant explains how he committed the crime, why he committed the crime, et cetera, it can be very powerful, just as the detailed testimony of E.J. was very powerful. But in a case like this, where the confession is not full, where it's bits and pieces of answers to questions, and indeed, if you were to take Hick's argument seriously, then this wasn't a reliable confession in the first place, and therefore the jury properly discounted the probative value of the confession when it deliberated over the evidence. Excuse me? That sounds a little bit circular. You've got a prosecutor who is making a lot of hay out of this phone call, right? And you've got a straight swearing contest, essentially, with victim and ex-wife on one side and defendant on the other. The trial would have seemed awfully different if the confession had been suppressed. I think you might spend more time usefully on the deficient performance question with respect to that issue. Happy to do so, Your Honor. On deficient performance, the key question under Strickland is, did this trial attorney not have a tactical reason for not bringing this motion? We know from Strickland cases that trial counsel does not have to bring every non-frivolous motion that can be thought of. So what was the downside? What would have been the downside to filing the motion to suppress? The downside from trial counsel's point of view at the time was that it would be better to make one motion that would be absolutely critical to the defense, a motion to exclude the other act's evidence, the testimony from the two brothers, which was damaging in this case, and not to file a motion that trial counsel at the time thought would fail. Hindsight has vindicated that judgment. Trial counsel also knew that the state wanted to preemptively bring the voluntariness issue before the court in the good child hearing, and it's well known under Wisconsin law that in a good child hearing, the state bears the burden. We know the state bore the burden in this case, and we know that the totality of the circumstances was cited to and applied by the state court. So trial counsel knows the issue is preserved. Now, trial counsel asked if he had resisted in the good child hearing, that's a good argument, but it sounds like he just rolled over. Is that what happened? He joined in. He said, I think this would be a good idea, too, Your Honor. To have the hearing. To have the hearing. But did he put up any arguments against admission? No, he didn't, but the question turned almost exclusively on the transcript of the call. I don't think that this is a particularly difficult kind of analysis for the state court to apply, knowing the law and knowing what happened on the call. But more importantly, under a clearly established Supreme Court precedent, we know that these quote-unquote threats on the call were not enough to overcome the defendant's ability to resist. There are two parts to the coerced confession analysis. One is, has there been a substantial element of improper police coercion, and has that coercion, have those tactics overborne the defendant's will to resist? Here, we have a credibility finding from a state court, virtually unrevealable on federal habeas, that the defendant was not particularly bothered, moved by the threats on the phone call. That's based on Mr. Wells' testimony, right? Not only Mr. Wells' testimony. The state court said Wells' testimony, the trial transcripts, and also the transcript of the call. But on Wells' testimony, which would be much more insulated from federal review, how does his testimony in the post-conviction proceedings square with his entire trial presentation? I'm glad you asked that, Your Honor. I think I can clear this up in about a minute. At trial, the question was, during the course of that phone call, did you feel threatened? And the defendant answered, yes. Now, under the other side's theory, that was suborning perjury, if that was a false statement. But it wasn't, because it's important when reviewing the trial transcripts to keep in mind that there are threats of physical harm on the call, there are threats to report to the biological son, and there are threats to report to the police. Now, we know from the post-trial hearing, the attorney is asked, so are you saying specifically that Hicks told you that despite these threats, where these threats in context refers clearly to the threats of physical violence, despite these threats, that he did not feel coerced or pressured in any way? Answer, yes, I am. Now, we know also from the other post-trial testimony that the attorney had been told that Hicks had been bothered by the threat to report to the son. So add that all together, and what do you have? You have a clear conclusion that the attorney, when he asked that question in trial, could have thought that Hicks felt threatened by the report to go to the police, but not threatened as to the physical violence or the threat to go to the biological son. In other words, you can't prove that he knew it was false. Did Mr. Wells slice and dice like that in his rebuttal argument, where he focused on the threatening nature of the call? He didn't need to slice and dice because every question had to do with specific threats on the call. It was a pretty methodical examination. In the rebuttal, though, when he's arguing against the jury's consideration of the tape,  and he's not categorizing it on a threat-by-threat basis like you are. No, I think it was to his strategic benefit to be general about it. He happened to know that his client did not take the threats of violence seriously, and, in fact, he testified to that trial. He said, I don't know that I'm particularly bothered by the XKGB agent line. He also said on the call, by the way, after EJ said, the moment I think you're lying, and this is the PG-rated version, it's going to be done, all right. And then Hicks proceeded to deny repeatedly his involvement. So it's clear that he didn't consider that, that that didn't overbear the defendant's will to resist. And as for the threat to report to the police, he says, in response to the question, so did you confess to the crime to avoid having EJ go to the police? Answer, I confessed to the crime to get off the phone. He said this no fewer than 11 times. I would submit that an ordinary person, if a person is called and threatened and told to confess to a crime, if he's asked about it 11 times after the fact, why did you confess, it's because I was worried that I would be harmed or because I was worried that he would go to the police or to the biological son. But instead he kept returning to this line again and again. Another question was, what is the purpose of making these repeated admissions of guilt on the phone? He says, to get off the phone. And he said, I also wanted to get with EJ's mother to talk this over, to see what was bothering EJ at the time. These aren't the statements of a person whose will has been overborne. I want to move to the closing argument because I have some real concerns about that. You say there that there's no prejudice from the prosecutor's improper statements, but doesn't the question from the jury suggest otherwise? And I'm having a really difficult time trying to determine why it would be a strategic decision not to object to a prosecutor implying that the jury should convict an individual because he entered a plea in another unrelated case. Your Honor, it was three lines in an 11-page closing statement. Oh, I get that, but they were dynamite lines. We submit that they came in the middle. The evidence of the sexual assaults against the other brothers was already admitted because the defense opened the door, and the question from the jury had to do specifically with why was his probation revoked? There was nothing in the record about that. It did come up that same day. It came up. It was a very elliptical part of the examination. The defendant says, yes, my probation was revoked, and then they move on to other things. Now, I think if you're a juror, you wonder, why did that happen?  So the jury had every right to wonder why did that happen, but, of course, it wasn't in the record. I think that's a far more plausible explanation of why the jury would ask that question. But perhaps even more importantly, the state and the defense counsel and the court repeatedly told this jury that they were to consider the evidence of the sexual assaults against the other brothers to go solely to the issue of motive. They were to consider the convictions to go solely to the issue of credibility. I think we generally assume that jurors follow the instructions, and as to the trial counsel's strategy. But, see, and, of course, if there had been an objection by Wells, the court would have probably would have stricken that statement and would have given the instruction there because the instructions you're referring to are all at the conclusion of the case, obviously, since there was no objection. That's right, Your Honor. The trial counsel's thinking was that the jurors might not have been paying attention at that point. It was sort of a vague illusion. It wasn't explicit. It wasn't as shocking as many improper comments can be in a closing statement. Well, and then what also concerns me, it's done like a rhetorical question. Was that a fair resolution for what happened? Like calling on the jury to make something, plea bargaining it down to a couple of misdemeanors, is that what should have happened here, or should we deal with this case? So, I mean, it puts it right on the jury to get all in that. Your Honor, I think another reason that trial counsel would not have objected at that point is, well, first of all, his view was that objecting generally during a closing statement is bad form, and the jurors might think poorly of you. And I get that that is a strategic decision a lot of people make, but there are times when you have to object. That's right, Your Honor. There's also, if I may move briefly before I sit down to the procedural default question on that claim in particular, since that is the basis of the district court's dismissal of that claim, you had in the statement of issues one, two, three, four, and the fourth used the words ineffective assistance in reference to this closing statement. Under Wisconsin rules, the petitioner then had to provide a section four that amplified the reasons relied upon in support of that question presented. There simply is no question four in this petition. This is a counsel petition, by the way. There's simply no question four. There is an argument that the closing statement violated a jury trial right in section three, but all the cases cited in that section go to due process or jury trial rights, federal claims not having to do with Strickland at all. A petitioner has to fully present, fully and fairly present a claim. It's not enough to say ineffective assistance. That's Berkel. That's the holding of Berkel. There was an argument that, well, courts of last resort shouldn't be troubled with these fact-bound disputes. And I understand if it's procedurally defaulted, we wouldn't get to the merits. That's right. Does the Wisconsin Supreme Court view itself as an error correction court? Not generally, but in particularly egregious instances, the court will do error correction, and more often than the United States Supreme Court, I will say. There are a lot of cases that are just straightforward application of settled law. I've got to say, at least in the absence of Baldwin looking at this petition, it seems like a sensible way to alert the Wisconsin Supreme Court to the issue but say this really is not why we are seeking your review. I think Berkel forecloses that line of proceeding. Berkel rests on the theory that the state court of last resort should be given an opportunity to wrestle with the claim. You have to fully and fairly present it. Can you refer to other documents to present that claim sufficiently? No, I think under Baldwin v. Reese, that's insufficient. You've got to put it in there. I see my red light is on. Thank you. Anything else? All right. Thank you. How much time? Two minutes? Well, Your Honors, in my two minutes, I'd like to address just a couple of points. One relating to the reasonableness of Attorney Wells' conduct in failing to move to suppress the coercive statements. First of all, Attorney Wells never really cited a tactical reason for not filing the motion. He simply argued he didn't think it would win. Yet that flies in the face of the trial strategy that he put on at trial. He argued in closing, as Judge Chang pointed out, that the statements that E.J. made during that phone call were threatening, menacing, and caused panic in Mr. Hicks. He clearly was arguing coercion in fact, if not legally. Secondly, in terms of Mr. Hicks testifying that he confessed to get off the phone, he did say that generally. He wanted to end this menacing, threatening phone call. But the specific trigger that caused him to get off the phone was when E.J. brought up the threats to divulge his allegations to Mr. Hicks' son, destroying his relationship with him and potentially opening him up to the entire host of ills that he suffered when previous misconduct of the same nature had been alleged. I'm sorry to eat your rebuttal time, but can I ask, on the prejudice element, would the entire tape have been suppressed if there was a motion to suppress though? Because there's that part in the beginning where E.J. there's some small talk and then E.J. puts the question to Hicks, why did you sexually molest me? And then there's some inaudible part and then Hicks says something to the effect of, can we talk about this later? And the prosecutor pointed out that that's not the way an innocent person talks. When confronted with why did you sexually molest me, it's what are you talking about? So there have been no threats at that point, right? That's true, Your Honor. There had been no coercion at that point. So that still would be a piece of evidence that would have entered trial even had you filed a motion to suppress? Perhaps, Your Honor. Perhaps. I'd say. All right. Your time has expired. Thank you. Thank you very much. Oh, and were you appointed? Yes. Yes. Thank you so much for your services. We really appreciate it. And thank you, counsel.